Shelly GUNNERUD, Appellant,

v.

STATE of Alaska, Appellee.

No. 3795.

Supreme Court of Alaska.

May 16, 1980.

Dennis Kelso and Mary E. Greene, Asst. Public Defenders, Fairbanks, Brian C. Shortell, Public Defender, Anchorage, for appellant.

Anne Carpeneti and Patrick J. Gullufsen, Asst. Attys. Gen., Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and STEWART, Superior Court Judge.

OPINION

BOOCHEVER, Justice.

Shelly Gunnerud appeals her conviction for possession and sale of heroin in violation of AS 17.10.010,[1] claiming several errors were committed by the court. Appellant argues that the superior court (1) improperly denied discovery of a psychiatric report concerning an adverse witness; (2) erred in failing to grant a mistrial after alleged prosecutorial misconduct; and (3) erred in allowing the playing of a tape recording which included evidence of Gunnerud exercising her constitutional right to remain silent after her arrest. We disagree with the first two contentions, but find the last alleged error requires a reversal and remand for a new trial.

In September, 1976, Gunnerud moved into a one-bedroom apartment which was then occupied by Earl Johnson, and continued to share this apartment with Johnson until both were arrested for the present matter on April 26, 1977. Earlier that day, Rondi Baker, a probationer, was found in possession of marijuana and cocaine by her probation officer. After being formally arrested and while on the way to the Fairbanks Correctional Center, Baker made an offer to the probation officer to serve as an informant for heroin drug "buys" concerning four people. After the officer contacted Baker's sentencing judge and the district attorney for possible objections, he arranged an interview for Baker with the head of the Area Wide Narcotics Team.[2] Shortly thereafter, Baker arranged the alleged buy from Johnson and Gunnerud by telephone. The phone conversation itself contained no mention of drugs.[3]

---

1. AS 17.10.010 states:
   It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter.
   Under AS 17.10.230(13), opium is a narcotic drug; AS 17.10.230(11), in turn, includes heroin in the definition of opium. *Tarnef v. State*, 492 P.2d 109, 110 n.1 (Alaska 1971).

2. The Area Wide Narcotics Team is a group of law enforcement officers from the Alaska State Troopers, Fairbanks City Police, and occasionally the Federal Drug Enforcement Administration that cooperate in a unified effort to detect and apprehend drug offenders.

3. At trial, however, Baker testified that she had previously purchased heroin from Johnson and Gunnerud several times a week.

Before being taken to Gunnerud's apartment, Baker was strip searched.[4] A one-hundred-dollar bill, which had its serial number recorded, was given to Baker to use as "buy" money. She then went to Johnson and Gunnerud's residence.

Baker testified that upon entering the apartment she asked Johnson if she could purchase some heroin. She then placed a one-hundred-dollar bill on the living room table, which was picked up by Gunnerud. Johnson brought her a "bag" of heroin. Sometime during all of this, Gunnerud repaid Baker a debt with two twenty-dollar bills which Baker promptly used to purchase an additional forty dollars worth of heroin. Baker self-injected this second purchase in the bathroom of the apartment. She then called a cab and left. After being followed and kept under close surveillance, she met a police officer at a pre-arranged spot and gave him a yellow balloon which contained the heroin.

After receipt of the balloon, the police secured a search warrant for the residence. According to the police, when the warrant was served Gunnerud and Johnson ran to the rear of the apartment. They were found in the bathroom; Gunnerud sitting on the toilet seat and Johnson in front of her. The officers pushed them aside and recovered several balloons from the swirling water of the flushed toilet. Later, laboratory reports confirmed that these balloons contained heroin. Also recovered were various pieces of evidence, including $535.00 in currency contained in a hollowed-out encyclopedia found in the bedroom of the apartment. The same one-hundred-dollar bill given to Baker was part of this currency[5] and Gunnerud later testified that she knew

where the encyclopedia was kept and that it was used as a place of safekeeping for cash.

## I. THE DENIAL OF DISCOVERY OF THE PSYCHIATRIC REPORT ON WITNESS RONDI BAKER

■ Prior to trial on the original indictment (later dismissed), appellant requested discovery under Criminal Rule 16[6] of any prior criminal convictions, psychiatric examinations, and records of police contacts to which the state had access concerning its key witness, Rondi Baker. The state filed a qualified opposition to the request, but the court issued an order to furnish such documents to the appellant. However, at a motion-to-produce hearing a few weeks later, the court learned of a probation officer's concern about the release of a psychiatric report on Baker, which was attached to a presentence report from a prior drug conviction. After reviewing the psychiatric report, which had been prepared by Baker's private physician, the court ordered it deleted from the presentence report. The reasons given were protection of Baker's privacy and the irrelevancy of the report regarding Baker's credibility as a witness. After a new indictment was filed, appellant renewed her motion for discovery of the report, principally because part of the presentence report that had been released mentioned Baker's having undergone electroshock treatment. The state opposed the request, and immediately prior to the start of trial the court again considered the motion, but denied it because the report did not bear on Baker's credibility. Appellant asks us to find reversible error in the court's ruling. We decline to do so.

---

4. Baker had been involved earlier that day in another drug transaction set up by the police. For that transaction she had been wired for sound, but the radio transmitter was removed before transporting her to Johnson and Gunnerud's apartment, because Johnson was known to have a device that warned of radio transmitters.

5. One officer testified that the $100.00 bill was in addition to the $535.00 found in the encyclopedia.

6. Alaska R.Crim.P. 16 reads in part:

(a) *Scope of Discovery.* In order to . . *afford opportunity for effective cross-examination,* and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, and the adversary system. [Emphasis added.]

In *Braham v. State*, 571 P.2d 631 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978), we adopted guidelines to assist us in meeting the goal of "full and free" disclosure expressed in Criminal Rule 16:

Non-disclosure [is] proper only if (1) the prosecution show[s] that discovery of the evidence would be inconsistent with protection of persons or enforcement of the laws and (2) the trial judge conclude[s] that the material was not relevant to the defense. If the district attorney fail[s] to show that disclosure would harm enforcement or protection efforts, the material must be disclosed. The question of relevance would then be decided in an adversary context; both counsel would have the opportunity to make their respective arguments.

571 P.2d at 643 (footnote omitted). Therefore, we must decide if the trial court properly applied this test to the fact situation before us.

It is clear to us that the prosecutor addressed the first issue in *Braham* with respect to the protection of persons or enforcement of laws. This was brought to the court's attention by written memoranda opposing appellant's requests, and at the first hearing. It is also clear to us that the trial court properly heard both sides of this argument in an adversary atmosphere and found the state's arguments to be persuasive.

At the first hearing, before viewing the medical records, the court said:

I'm not going to grant that motion unless Dr. Whelan can first advise that the his-

tory and the examination and diagnosis—treatment or anything else—or, any prognosis that he might have concerning this witness would be such as to bear upon her credibility. Or, could bear upon her credibility as a witness. And unless it be for that purpose, I can't see where she has to give a carte blanche . . . medical release. If it does, then I think that the medical records that do bear on her credibility should be.

Shortly thereafter the judge briefly viewed the file and said, "There's nothing else in here that . . . in my opinion, bears on credibility at all."

We agree with the trial court that it would be an unwarranted infringement of Baker's privacy,[7] and therefore inconsistent with the protection of persons, to grant access to Baker's private medical records unless the material was relevant. The trial court made the determination of relevancy a few minutes after passing on the issue of privacy. In reviewing that decision, we have carefully scrutinized the psychiatric report in question and conclude that the trial court was not in error in denying the appellant access to it. We are mindful of the appellant's concern over being denied effective cross-examination, but find upon reviewing the record that Baker was thoroughly examined on her credibility and reliability as a witness. Nor do we find that the psychiatric report would have contributed in any meaningful way to a more effective cross-examination. We find the trial court's determination to be substantially within our guidelines for judging relevancy and materiality.[8] Thus, the trial court did

---

7. Article I, section 22, of the Alaska Constitution reads in part, "The right of the people to privacy is recognized and shall not be infringed."

8. "The words 'relevant' or 'relevancy' encompass the concept of materiality. We have held in a number of cases that for evidence to be admissible it must be relevant, and to be relevant, it must tend to establish a material proposition." *Braham v. State*, 571 P.2d 631, 643 n.17 (Alaska 1977). Other cases discussing relevancy are *Hartsfield v. Carolina Cas. Ins. Co.*, 451 P.2d 576, 578 (Alaska 1969), and *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964).

The test for relevancy was clearly spelled out in *Poulin v. Zartman*, 542 P.2d 251, 260 (Alaska 1975), which stated:

Alaska case law defines the test of relevancy. "To be of sufficient relevance for admission, testimony, documents or other evidence must have some tendency in reason to establish a proposition material to the case." *Hutchings v. State*, 518 P.2d 767, 769 (Alaska 1974). The dual concepts of logical relevance, i. e., some tendency to establish the ultimate point for which the evidence is offered, and materiality, i. e., germaneness of the ultimate point to issues in the trial, have

not abuse its discretion and the appellant was not denied her constitutional right of compulsory process.

## II. THE COURT'S FAILURE TO GRANT A MISTRIAL DUE TO ALLEGED PROSECUTORIAL MISCONDUCT

■ Appellant claims that alleged prosecutorial misconduct against her co-defendant prejudiced her case as well.

During direct and cross-examination, appellant's co-defendant, Earl Johnson, was extensively questioned on his use of several aliases appearing with his picture on identification cards. Johnson maintained that he used the names only in obtaining employment. The following exchange took place when Mr. Call, the prosecutor, presented his closing arguments just before the jury was to deliberate:

> MR. CALL: Now, these identification cards. I asked him whether he'd used some other names. He admitted using three different names, Earl Johnstone, Robert Price, and the name he used, he's given us now. . . . Note Earl's reasons for obtaining these false ID's. So his background couldn't be checked by his employers. I suggest that additional, logical, probable reason is that so the police and the District Attorney's office couldn't check his background either.
>
> MR. KEEVER [co-defendant Johnson's counsel]: Your Honor, I don't want to object and I don't like to be objected to when I'm making argument. The testimony is there, that's incorrect statement as I recall. There's also testimony there were no prior convictions that could have been checked. If they want to do that, let them produce their evidence.

THE COURT: Well, again I'm going to rely on the recollection of the jury as to what the evidence is.

If there is a misstatement of evidence, you rely on your own recollection of what was actually said and testified to.

> MR. CALL: I would concur on that. . . I want you to remember one further thing during that redirect examination after I produced those cards. *Remember how carefully his lawyer phrased the question, have you ever been convicted of a crime under the names Earl Johnson, Earl Johnstone, or Robert Price? Didn't ask him, have you ever be [sic] convicted of a crime?* [Emphasis added.]

Immediately thereafter, the court gave the jury its instructions and then asked counsel if there was anything else that needed to be considered:

> MR. KEEVER: Yes, Your Honor. I'd like to move for mistrial at this time, Your Honor. . . . [C]ounsel very carefully and precisely asked if the man had ever been convicted of a crime under three separate names, inferes, [sic] implies that there is an existing conviction. . . . I think it's so prejudicial there's no way I can counteract that statement that has gone to the jury. I move for a mistrial, at this time.
>
> .     .     .     .     .
>
> THE COURT: Well, I'm not going to grant the mistrial. . . . I think that argument was not proper, but I don't think it is such as to be of such prejudice to the defendant that they cannot get a fair trial with this jury.

Appellant Gunnerud argues that, because co-defendant Earl Johnson's credibility was improperly prejudiced, she was harmed, as Johnson's testimony was exculpatory of her involvement in criminal activity.[9] Thus,

been emphasized repeatedly in our opinions. [Footnote omitted.]
*See generally* E. Cleary, McCormick on Evidence § 185 at 434 (2d ed. 1972, Supp.1978). Since the trial of this case, the Alaska Rules of Evidence have been adopted. Rule 401 defines relevant evidence.

**9.** Johnson testified that after Baker had arrived and had been given the forty dollars by Gunnerud, she came into the front room, opened a napkin and showed him about six balloons containing heroin. According to Johnson, Baker said she had stolen the heroin and was prepared to share a part of it with him. Johnson "snorted" some of the heroin and Baker self-injected some. She also gave Johnson a hundred-dollar bill in order to get change in twenties. Johnson testified that he put the bill in his pants pocket. Baker asked Johnson to hold

Gunnerud claims she was deprived of a fair trial.[10] We disagree.

■ This court has stated previously that a prosecutor's comments that have an evidentiary basis and are within the reasonable range of inferences deducible from the evidence will not be considered improper argument. *Darling v. State*, 520 P.2d 793, 794 (Alaska 1974); *Howard v. State*, 491 P.2d 154, 156 (Alaska 1971); *Gafford v. State*, 440 P.2d 405, 414 (Alaska 1968); *Anderson v. State*, 384 P.2d 669, 674 (Alaska 1963). It is well settled that a prosecutor's remarks that make an appeal to prejudice by charging previous unproven criminal convictions, or inferring such, are prejudicial and in many cases reversible error. *See Ciravolo v. United States*, 384 F.2d 54 (1st Cir. 1967); *People v. Berlin*, 58 Ill.App.3d 612, 16 Ill.Dec. 173, 374 N.E.2d 948 (1978); *State v. Day*, 91 N.M. 570, 577 P.2d 878 (App.1978); *see generally United States v. Constant*, 501 F.2d 1284 (5th Cir. 1974); 3 C. Torcia, Wharton's Criminal Procedure § 521 (12th ed. 1975); 75 Am.Jur.2d § 302 (1974).

While we think the remarks by the prosecutor were without question improper, we also conclude that under the nonconstitutional error test of *Love v. State*, 457 P.2d 622 (Alaska 1969),[11] Gunnerud's substantial interest in receiving a fair trial was not impaired by those comments.

Our decision rests on two observations. First, if one assumes that the adverse inferences of the prosecutor's remarks were believed, that would have had a minimal impact on Gunnerud's credibility since it was already established that she had a prior record. If anything, "guilt by association" inferences would have worked more to Johnson's detriment.

Second, whatever Earl Johnson's story lacks in believability it makes up for in imagination. We fail to see how a jury would believe that Baker, who was thoroughly searched and kept under close scrutiny, would walk into Johnson's apartment with six balloons of heroin, claim they were stolen, share some of the bounty with him, and then casually ask Johnson to "change"

the balloons until she could come back because she feared someone was pursuing her. When the police search occurred, Johnson realized he had been trapped by Baker and he attempted to rid himself of the narcotics by flushing them down the toilet.

**10.** We reject the state's assertions that we not consider the merits of this point on appeal because Gunnerud has no standing to object, and because, assuming no plain error, her counsel failed to make a timely objection at trial.

The state cites *State v. Lewis*, 559 P.2d 630, 634–36 (Alaska 1977); *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976); *Wagstaff v. Superior Court*, 535 P.2d 1220, 1225 (Alaska 1975); and *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), to support its claim that Gunnerud lacks standing. *Lewis, Moore* and *Wagstaff* all dealt with a plaintiff's right to bring a civil action, a situation inapposite to the one here. *Rakas* and its predecessors dealt with standing in relation to fourth amendment rights, something that is clearly distinguishable from a defendant claiming that her right to a fair trial has been jeopardized. Gunnerud has standing to attack the improper examination of her co-defendant's credibility because Johnson's credibility was relevant to her guilt or innocence, thus possibly affecting whether she could receive a fair trial. *See Scott v. Perini,*

439 F.2d 1066, 1068 (6th Cir. 1971); *Kinser v. Cooper*, 413 F.2d 730, 732 (6th Cir. 1969).

Second, the rule of not considering an issue unless previously objected to is for the purpose of allowing its meaningful consideration by the trial court. *Lewis v. State*, 565 P.2d 846, 853–54 (Alaska 1977). The record shows that both defense attorneys worked closely with one another and acted in concert on motions that concerned both defendants. That fact, coupled with the timely objections by Gunnerud's co-counsel, leads us to believe that *Lewis's* intent of furnishing the court an opportunity for prior meaningful consideration of the issue was met by appellant. To obviate such problems in the future we suggest that counsel seek a stipulation in open court that objections by counsel with one defendant shall be considered, when applicable, as being made on behalf of both defendants.

**11.** In *Love v. State*, 457 P.2d 622, 630 (Alaska 1969), we define the test in the following way:

The pivotal question is what the error might have meant to the jury. Our function is to consider not how the error would have affected us if we had tried the case, but how it [might] have affected a jury of reasonable laymen. It is the impact on their minds which is critical in determining whether an error impaired or affected the substantial interest of the defendant in having a fair trial.

a hundred-dollar bill. Nor do we think the jury was persuaded by Johnson's explanation that he had no idea of how Baker's hundred-dollar bill got from his trouser pockets into the hollowed-out encyclopedia in the bedroom. In short, Johnson's story was so incredible that whatever exculpatory support it might have provided Gunnerud was effaced by its own unbelievability, and not by the prosecutor's remarks.

Finally, although we think the comments were not so prejudicial as to require the granting of a mistrial, we feel that a curative instruction would have remedied the matter in short order. Counsel failed to request a curative instruction. Although we believe that it would have been preferable for the court on its own initiative to have offered one, under the circumstances the court's failure to do so was harmless.

In summary, we can say "with fair assurance, after pondering all that happened without stripping the erroneous action [prosecutor's remarks] from the whole, that the judgment was not substantially swayed by the error . . . ."[12]

## III. THE INTRODUCTION OF EVIDENCE OF GUNNERUD'S POST-ARREST SILENCE

■ During the course of the trial the prosecutor, as a part of his case in chief, sought to introduce a tape recording of the search warrant proceedings conducted at Johnson and Gunnerud's apartment, which included evidence showing the appellant exercising her right to remain silent after being given *Miranda* warnings.[13] Appellant Gunnerud claims that the introduction of such evidence was reversible error.

The section of the recording at issue comes several minutes into the search. Gunnerud asked if she could have her lawyer present before she was questioned further. Prior to the introduction into evidence of this recording, counsel objected to that portion of the tape being played before the jury which showed Gunnerud exercising her rights to counsel and to remain silent.

■ It is well settled that prosecutorial comment on silence for substantive or impeachment value is constitutionally prohibited. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This court has also specifically disapproved any comment upon a defendant's exercise of the right to remain silent. In *Davis v. State*, 501 P.2d 1026, 1030–31 (Alaska 1972), the court stated:

> [W]e do consider this an appropriate occasion to voice our disapproval of any comment absent waiver by the prosecution of an accused's silence resulting from the exercise of his constitutional rights. Article I, section 9 of Alaska's constitution provides in part that "No person shall be compelled in any criminal proceeding to be a witness against himself." In another context in *Bargas v. State*, 489 P.2d 130, 133 (Alaska 1971), we commented that:
>
> > One's assertion of his constitutional right not to submit to a search of his person cannot be used as evidence of guilt if this constitutional right is to have any meaning. . . . It was error to allow Herl to testify as to

---

12. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566–67 (1946).

13. In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), the United States Supreme Court held that the prosecution may not use statements stemming from custodial interrogation of a defendant unless it demonstrated the use of procedural safeguards effective to secure the privilege against self-incrimination. Specifically the court said the following measures are required:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

After Gunnerud received these warnings, she asked, "Could we just answer any other questions with our lawyer present as you've notified us?"

appellant's refusal to submit to a search.

There is considerable federal precedent to the effect that an inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested. [Footnote omitted.]

A 1976 concurring opinion by Chief Justice Boochever and Justice Rabinowitz in *Coleman v. State*, 553 P.2d 40, 53 (Alaska 1976) (footnotes omitted), states:

> An inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested, and evidence of silence in the face of custodial interrogation by police is not properly admissible in a trial.[14]

The state contends that if error occurred it was harmless. Since the constitutional rights to remain silent and to the assistance of counsel are involved, we shall apply the *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), test. *Chapman* requires that the error be harmless beyond a reasonable doubt.

We can see no reason why it was necessary for the prosecution to introduce the portion of the recording into evidence other than to show an inference of guilt at the expense of the appellant's rights to counsel [15] and to remain silent.[16]

In determining whether the error was harmless we note that Gunnerud's conviction depended principally upon Baker's testimony. The evidence against Gunnerud was strong, but not overwhelming. Gunnerud's story of being in the bedroom during any exchange of heroin taking place between Baker and Johnson could be believed.[17] So could her account that she was unaware of Johnson's possession of heroin. When the alleged buy was set up no mention of drugs was made on the telephone, and those parts of Earl Johnson's story that are capable of belief (*i. e.*, that he received the one-hundred-dollar bill) do support Gunnerud's version. Finally, Baker's animosity toward Gunnerud is a factor that may be considered. In view of those considerations we cannot conclude beyond a reasonable doubt that the adverse inferences arising from Gunnerud's exercise of her constitutional rights to counsel and to remain silent could not have influenced the jury. Therefore, we hold that the error was not harmless beyond a reasonable doubt. The judgment of the superior court is REVERSED, and the case is REMANDED for a new trial.

---

14. *See Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Impson*, 531 F.2d 274 (5th Cir. 1976), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 803 (1978); *Davis v. State*, 501 P.2d 1026 (Alaska 1972).

15. U.S.Const. amend. VI; Alaska Const. art. I, § 11.

16. U.S.Const. amend. V; Alaska Const. art. I, § 9.

17. Gunnerud's version was that when Baker arrived at the apartment she immediately handed Baker forty dollars in payment of an existing debt. Gunnerud then went into the bedroom and left Baker with Johnson in the living room. A few minutes later, Gunnerud's friend Patty Tyler arrived and joined her in the bedroom. Gunnerud heard sounds of Johnson "snorting" heroin and later found in the kitchen sink a spoon which had been used to prepare heroin for injection. She cleaned the spoon and assumed it had been used by Baker. When the police arrived, Gunnerud was smoking marijuana in the front room. Upon realizing the police were at the door, Gunnerud became frightened because she was on probation and realized that she was about to be found violating her probation by using marijuana. She immediately ran to the bathroom in the rear of the apartment. Johnson followed, threw balloons into the toilet, flushed it and told her to hold down the handle. Assuming that the balloons contained either heroin or cocaine, Gunnerud complied with his request and held down the handle.