**Rick SPENCER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5414.**

Court of Appeals of Alaska.

April 8, 1982.

James H. Cannon, Jane F. Kauvar, Asst. Public Defenders, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Rick Spencer was convicted of first degree murder and sentenced to life imprisonment. The judgment of conviction provides that he shall not be eligible for parole until he has served twenty years. He appeals challenging both his conviction and the sentence imposed. On the merits, he argues primarily that the court prejudiced his defense by denying him discovery of certain psychiatric records of his wife, Monika Barber Spencer, and of Michael Bowlin, a fellow pretrial detainee. Ms. Spencer and Mr. Bowlin were major witnesses against Spencer at trial.[1]

We will set out the facts only to the extent necessary to illustrate the issues present.

In December of 1976, Rick Spencer, Monika Barber, Donald Grunewald, and another man were sharing a house in Fairbanks. On January 7, 1977, Grunewald's body was found in an abandoned gold dredge outside town. Police interviewed the other residents of the house on January 8, 1977. Two days later, Monika Barber was interviewed again at the Alaska State Trooper headquarters in Fairbanks. Rick Spencer and Monika Barber left Fairbanks that same day and left Alaska within ten days. The investigation into Grunewald's death continued, and it included seizure of several items from the house in Fairbanks.

Over the next eighteen months, Rick Spencer and Monika Barber lived together in various parts of the United States. During this period, Monika Barber received mental health counseling and treatment for alcoholism at various hospitals, frequently on an in-patient basis. Spencer reenlisted in the United States Army in California and was reassigned to Fort Benning, Georgia.

On September 12, 1977, the two were married in Alabama.

Sometime in July of 1978, Monika Barber Spencer and Rick Spencer separated. Monika was subsequently arrested, convicted, and sentenced for grand larceny in Lewiston, Idaho. On January 5, 1979, Monika's mother contacted Investigator McCann to say that her daughter wished to speak with him. When McCann interviewed Monika in jail on January 31, 1979, Monika gave a detailed account of her activities and those of her husband around the time of Grunewald's death. This account differed greatly from her previous accounts, and it included a great many incriminating statements made to her by Rick Spencer. Many of the details she gave were verified when officers checking them out found material evidence, which in turn connected Spencer to the killing of Grunewald.

Monika Barber Spencer testified before a grand jury on October 16, 1979, and an indictment was returned for first degree murder against Rick Spencer.

After pleading not guilty at his arraignment, Spencer moved for pretrial discovery of "[a]ny record of previous commitments or residence in any mental health institution or treatment facility of any witness whom the prosecuting attorney intends to call at trial." He relied on Alaska Rule of Criminal Procedure 16. Three weeks later, on February 22, 1980, Spencer moved that the state be required to furnish him with "the medical, including psychiatric records, of Monika Barber or a release of physician/patient, psychotherapist/patient privilege signed by Monika Barber or alternatively that her testimony be suppressed" at trial. The memorandum in support of this motion specified two hospitals at which Monika had allegedly received treatment, but also stated that without "being provided

---

1. Spencer also argues that the trial court erred in excusing certain jurors for cause. We find no error. Spencer's contention is that *Lupro v. State*, 603 P.2d 468 (Alaska 1979), was wrongly decided. This argument must be made to the supreme court. *See Loveless v. State*, 634 P.2d 941, 942 n.5 (Alaska App.1981); *People v. Rincon-Pineda*, 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247, 252–53 (Cal.1975); *Auto Equity Sales, Inc. v. Superior Court*, 57 Cal.2d 450, 20 Cal.Rptr. 321, 369 P.2d 937, 939–40 (Cal.1962).

... access to such information defendant can't even know for sure who treated Monika Barber Spencer."

At an omnibus hearing on March 13, 1980, in front of Judge Van Hoomissen, the prosecutor stated that Monika Spencer had signed a waiver of her records to his office and that he had sent record requests to the institutions she had named, giving copies to defense counsel. The court proposed *in camera* inspection, but defense counsel suggested that Dr. Irvin Rothrock, a psychiatrist practicing in Fairbanks, help the court evaluate the records to determine whether there was anything that would affect Monika's ability to perceive at relevant times. Judge Van Hoomissen agreed to have Dr. Rothrock evaluate the records and inform the court and counsel. Defense counsel was specifically told that he could consult with Dr. Rothrock regarding the records.

Another person listed by the state as an anticipated witness in the Spencer trial was Michael Bowlin. While awaiting trial, Bowlin had been incarcerated with Spencer at the Fairbanks Correctional Center, and he claimed Spencer had made certain incriminating statements to him. His testimony was offered in exchange for the dismissal of some of his pending charges.[2]

Spencer's counsel learned that Bowlin had been examined at the Alaska Psychiatric Institute while in custody, and he filed a motion on March 26 for release of the report of Bowlin's examination or, alternatively, for another psychiatric examination.

Spencer's trial began on April 1, 1980, with Judge Blair, rather than Judge Van Hoomissen, presiding. The prosecutor informed the judge that Dr. Rothrock's report on Monika Spencer was now completed and that reports from the various institutions had been filed with the court. He also indicated that a report on Michael Bowlin by Dr. Rothrock had been filed.

The trial judge examined the reports *in camera*, and on April 2, 1980, ruled that nothing would be disclosed except Dr. Rothrock's evaluation of Monika Spencer, at least for the time being. With regard to Ms. Spencer, Judge Blair stated, "I'm fairly convinced it's not going to do you any good in this case." With regard to Bowlin, he stated, "I just can't find anything in there that's gonna be beneficial to you. You have the dates when he was at API. You can question him all you wish...." The trial judge made the following comment regarding both Ms. Spencer and Bowlin: "If either of these persons says anything that's contrary or contradictory to anything that's in the record, why, we'll take that up at that time." Judge Blair also stated that nothing in either record was relevant and that "the doctor says both can testify."

Monika Spencer and Michael Bowlin both testified at trial. At no point did Judge Blair indicate that anything in any of the records had been contradicted in testimony. The jury found Rick Spencer guilty of first degree murder, and he appeals, in part, on the basis of Judge Blair's denial of his motions for discovery.

## I. DID THE TRIAL JUDGE ERR IN REFUSING TO DISCLOSE PSYCHIATRIC AND MEDICAL RECORDS OF MONIKA BARBER SPENCER?

Alaska Rule of Criminal Procedure 16 sets forth the basic standards relating to discovery. Rule 16(a) provides:

*Scope of Discovery.* In order to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, and the adversary system.

---

2. Bowlin's indictment charged six counts of assault with a deadly weapon, three counts of lewd and lascivious acts, and three counts of rape, all incidents involving his family. Bowlin

ultimately received a 20-year sentence and the trial court expressly indicated that he received credit for cooperation with the authorities.

Criminal Rule 16(b)(1)(iv) requires disclosure to the accused of "[a]ny reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons." Because Dr. Rothrock's evaluation of Monika Spencer was ordered by the prosecution, and a copy of the evaluation was given to the defendant before trial, it is not necessary for us to determine whether Rule 16(b)(1)(iv) is limited to the defendant or applies to examination of third parties, including witnesses for the prosecution. The records of Ms. Spencer's past psychiatric and psychological treatment received by the district attorney in response to his letters to the hospitals and treatment centers, however, clearly fall outside of Rule 16(b)(1)(iv) and therefore must be considered under the broad directive of Rule 16(a). Consideration should also be given to Rule 16(d)(6) which allows for "showing of cause for denial or regulation of disclosure ... to be made to the court in camera ex parte," and requires a record to be made of the proceedings.

In *Braham v. State*, 571 P.2d 631 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978), the standards and procedures to be used in applying Rule 16 were set out. Generally, the court held that any material in the possession of the prosecution requested by the defense should be turned over to it unless (1) disclosure would injure third parties or handicap law enforcement, and (2) the matter to be disclosed was not relevant. Specifically, the court said:

> Non-disclosure was proper only if (1) the prosecution showed that discovery of the evidence would be inconsistent with protection of persons or enforcement of the laws and (2) the trial judge concluded that the material was not relevant to the defense. If the district attorney failed to show that disclosure would harm enforcement or protection efforts, the material must be disclosed. The question of relevance would then be decided in an adversary context; both counsel would have the opportunity to make their respective arguments.
>
> Disclosure is also required if the judge's in camera inspection showed that the material was relevant to the defense—whether or not the prosecutor had demonstrated that discovery would be inconsistent with enforcement or protection efforts. In the latter circumstance, the state must decide between continuing to prosecute, while incurring the problems posed by disclosure, and terminating the prosecution in order to maintain the material's secrecy.

*Id.* at 643 (footnotes omitted). The *Braham* court grounded its interpretation of Rule 16 on the dual constitutional requirements of due process and the right to compulsory process for obtaining favorable witnesses. *Id.* at 644.

In *Gunnerud v. State*, 611 P.2d 69 (Alaska 1980), the defendant's request for disclosure of a witness' psychiatric records was discussed under the *Braham* test. The *Gunnerud* court examined the psychiatric records and the record of the trial to determine if the trial judge had properly applied the *Braham* test, and it concluded that he had done so:

> We agree with the trial court that it would be an unwarranted infringement of Baker's [the witness in question] privacy, and therefore inconsistent with the protection of persons, to grant access to Baker's private medical records unless the material was relevant. The trial court made the determination of relevancy a few minutes after passing on the issue of privacy.... We are mindful of the appellant's concern over being denied effective cross-examination, but find upon reviewing the record that Baker was thoroughly examined on her credibility and reliability as a witness. Nor do we find that the psychiatric report would have contributed in any meaningful way to a more effective cross-examination. We find the trial court's determination to be

substantially within our guidelines for judging relevancy and materiality.

*Id.* at 72 (footnotes omitted).

■ *Gunnerud* would therefore be dispositive of the first prong of the *Braham* test if Ms. Spencer had herself invoked her privilege against disclosure. The trial court's failure to insure that she, rather than the state, opposed disclosure was error, but for reasons that will appear hereafter, the error was harmless.[3]

The trial court, having concluded that the first prong of the *Braham* test was met, proceeded to an *in camera* determination of relevancy.[4] In making such an evaluation, the trial court should recognize that evidence is never relevant in a vacuum. Its relevance turns on the issues in the case, including the elements of the crime and of possible defenses, and on the credibility and competency of witnesses. Finally, the issue of discoverability should not be perceived as an all or nothing proposition. Certainly, relevant information within the witness' psychiatric records could be disclosed without turning over the records themselves. Alaska R.Crim.P. 16(d)(5). Examining the records with these principles in mind, we conclude that the trial court's treatment of

Ms. Spencer's psychiatric records did not constitute prejudicial error. Ms. Spencer was thoroughly examined on her credibility and reliability as a witness. In her testimony before the grand jury (which was available to the defendant pretrial), repeated references were made to her life as a prostitute, her excessive use of alcohol and drugs, her frequent "blackouts," her criminal conviction, and her psychiatric problems. There is nothing in her extensive psychiatric records bearing on her credibility and competency that would not be cumulative to her trial and grand jury testimony. Finally, we agree with the trial court that there is nothing in the psychiatric records inconsistent with her testimony at trial. To the extent the trial judge erred in not ascertaining from Ms. Spencer herself whether she wished to invoke her privilege against disclosure, the error was harmless beyond a reasonable doubt.

## II. DID THE TRIAL JUDGE ERR IN REFUSING TO DISCLOSE THE PSYCHIATRIC RECORDS OF MICHAEL BOWLIN?

■ The trial court also erred in not assuring itself that Bowlin personally wished

---

3. *Compare Morrell v. State,* 575 P.2d 1200, 1205 (Alaska 1978). In *Gunnerud* and *Morrell,* the court dealt with the problem of discovery from third persons, a matter not directly addressed in Criminal Rule 16. *Compare* ABA Standards for Criminal Justice, Discovery and Procedure Before Trial, 11–4.8 (1979) (third party disclosures). We caution trial judges to make sure that the individuals involved in third party discovery, in fact, resist discovery by invoking their privilege before denying discovery on this ground. We also believe that a prosecutor may not ethically influence his witnesses to claim a privilege. *See* Alaska R.Crim.P. 16(d)(1). Since the trial court did not specifically ascertain that Ms. Spencer wished to claim a privacy interest in her records, we find error, but consider the error harmless for reasons set out hereafter. Finally, we recognize that the state may fear that its witnesses' willingness to testify will be chilled if their privacy is unnecessarily invaded. To this extent, the state does have an interest in protecting its witnesses' privacy. Nevertheless, we believe that the requirement that the witnesses themselves invoke their privilege will

not hinder the state and will, consistent with the privilege, protect the defendant's interest in discovery.

4. The supreme court in *Braham v. State,* 571 P.2d at 643 n.17, and in *Gunnerud v. State,* 611 P.2d at 72 n.8, held "relevancy" to be synonymous with "materiality." We adhere to those rulings but note the following comment on relevancy appearing in the comparable Alaska rule governing civil discovery, Alaska R.Civ.P. 26(b)(1):

It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Given the broad grant of discovery contained in Criminal Rule 16(a) and given the difficulty the defendant will have in establishing the relevancy of evidence he has not seen, we believe the trial court should order information likely to lead to the discovery of evidence disclosed to the defense under Rule 16.

to invoke a privilege to prevent disclosure of his psychiatric records. We reiterate that this is not a decision to be made by the prosecutor on the witness' behalf. But, having reviewed the record, we are satisfied that any error was harmless. There is nothing in the psychiatric records or reports to support a finding that Bowlin was incompetent to testify as a witness. The jury was aware of the nature of his crimes and of the potential consecutive sentences of over 100 years that he faced. Finally, the jury was informed of Bowlin's plan to win the confidence of his cell mates in the hope of eliciting incriminating statements to be bartered to the state for a reduced sentence and of the lies he told his fellow prisoners to gain their confidence. Consequently, to the extent that any evidence in the psychiatric reports bore on Bowlin's credibility, the information would have been cumulative to that introduced at trial. We find no prejudicial error.

### III. WAS SPENCER'S SENTENCE EXCESSIVE?

■ Spencer's sentence for first degree murder has two components: first, a term of life imprisonment; and second, a twenty-year limitation on his eligibility for parole. The trial court carefully reviewed the facts of this case under the standards established in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). We believe the court's treatment of rehabilitation was adequate. *See Shagloak v. State*, 582 P.2d 1034, 1039 (Alaska 1978). Given the nature of the crime, the obvious premeditation, and Spencer's callous disregard for his victim, we cannot say that a life sentence for this first degree murder was clearly mistaken.

■ Nevertheless, we believe the record is inadequate to support the limitation on parole eligibility imposed. In *Jackson v. State*, 616 P.2d 23, 25 (Alaska 1980), the supreme court suggested that where the trial judge designates a parole eligibility period greater than the statutory minimum, he should articulate his reasons on the record. Here the trial judge gave no specific explanation for his decision to extend the period of eligibility from the statutory fifteen years to the twenty years prescribed. We reject the state's suggestion that the court's reasoning can be inferred from its general remarks regarding rehabilitation, isolation, and deterrence. Where an extended parole eligibility term is imposed, the court must specifically address the issue and set out with particularity its reasons for concluding that the parole eligibility term prescribed by statute would be insufficient to protect the public and insure the defendant's reformation.[5]

---

5. Spencer also argues that the court erred in imposing sentence without a psychological or psychiatric evaluation. The record does not reflect a defense request for such an evaluation prior to sentencing, nor does Spencer indicate in his brief how such an examination would have benefited him in sentencing. We note that there is no suggestion that Spencer suffers from a treatable mental illness or that such a mental illness influenced his criminal activity. Finally, while the record reflects that Spencer abused drugs, including alcohol, there is no suggestion that drug or alcohol abuse contributed to his criminal activity. Consequently, we find no error in the trial court's imposing sentence without first having Spencer evaluated by a psychologist or psychiatrist. Our decision, however, does not prejudice an appropriate application to the trial court hereafter. Alaska R.Crim.P. 35(a).

We agree with Spencer's suggestion that he should not be penalized by receiving an aggra-

vated sentence for exercising his fifth amendment rights. *United States v. Garcia*, 544 F.2d 681 (3rd Cir. 1976). A court may be justified in considering an admission of responsibility as the first step to rehabilitation. *Christian v. State*, 513 P.2d 664, 670 (Alaska 1973). *Compare Campbell v. State*, 594 P.2d 65, 67–68 (Alaska 1979). A defendant may well hesitate to admit a crime, even though convicted, while his appeal on the merits is pending. *Christian v. State*, 513 P.2d at 670 n.6. Now that his appeal has been resolved he may feel more willing to participate in the sentencing proceeding; if not, the trial court should carefully explain what effect, if any, Spencer's denial of responsibility has on the sentence ultimately imposed. *See Schmid v. State*, 615 P.2d 565 (Alaska 1980). *Compare Roberts v. United States*, 445 U.S. 552, 562–63, 100 S.Ct. 1358, 1365–66, 63 L.Ed.2d 622, 632 (1980) (Brennan J., concurring).

The judgment of the superior court is therefore AFFIRMED in part and REVERSED in part and this case is REMANDED for resentencing.