Robert Douglas JOLLEY, Appellant,

v.

STATE of Alaska, Appellee.

No. 5747.

Court of Appeals of Alaska.

Dec. 10, 1982.

Geoffry B. Wildridge, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, Chief Judge, SINGLETON, Judge, and CARLSON, Superior Court Judge.*

OPINION

SINGLETON, Judge.

Jolley was found guilty of manslaughter, former AS 11.15.040 and aggravated assault, former AS 11.15.225, in connection with the death of Jesse Orrison, age three and one-half years, the son of Connie Orrison, a woman with whom Jolley resided. The cause of Jesse's death was a rupture to his intestine. The state proceeded to trial on the theory that physical abuse caused the ruptured intestine and that Jolley was the perpetrator of the abuse. The jury agreed.

Jolley raises three points on appeal. First, he contends that the trial court erred in instructing the jury on both negligent homicide and manslaughter under our former code, without specifically instructing the jury that intent to kill was an element of the crime of manslaughter. The Supreme Court of Alaska has rejected this contention in a number of cases and we are bound by those decisions. *See Valentine v. State,* 617 P.2d 751, 753–54 (Alaska 1980); *Keith v. State,* 612 P.2d 977, 987 (Alaska 1980); *Kvasnikoff v. State,* 521 P.2d 903, 906 n. 8 (Alaska 1974). Thus, an unlawful striking that proximately caused Jesse's death was sufficient for manslaughter; it is not necessary that Jolley intended to kill. In fact, unless mitigated, intent to kill plus death equals murder not manslaughter, un-

* Carlson, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

der our former code. *See Padie v. State,* 557 P.2d 1138 (Alaska 1976).

■ Jolley's second argument is that the evidence was insufficient to establish his guilt of manslaughter beyond reasonable doubt.[1] We have recently set forth the standard we will apply in reviewing claimed error in denying motions for judgment of acquittal.

In reviewing the denial of a motion for judgment of acquittal, this court must consider the evidence and the reasonable inferences arising therefrom in the light most favorable to the state and determine if fair-minded jurors in the exercise of reasonable judgment could differ, on the question whether guilt has been established beyond a reasonable doubt. If jurors could so differ, then the case was properly submitted to the jury. We must consider the entire record, not just the prosecutor's case in chief regardless of when the motion for acquittal was made.

*Elson v. State,* 633 P.2d 292, 298 (Alaska App.1981) (citations omitted).

It is not necessary to detail the evidence regarding Jesse Orrison's last sad days on earth. Let it suffice to say that during the approximately three months that Jesse resided with his mother and Robert Jolley, he was subjected to a continuous course of physical abuse which caused severe visible injuries. There was substantial medical evidence that his death resulted from that physical abuse and substantial independent evidence that Jolley was the perpetrator of that abuse. Under those circumstances, reasonable jurors could find beyond reasonable doubt that Jolley was guilty of manslaughter in the death of Jesse Orrison.

Jolley's final point is that the trial court erred in failing to grant a mistrial following testimony by Connie Orrison allegedly commenting on Jolley's exercise of his fifth amendment right to remain silent. The relevant testimony is as follows:

1. Jolley also complains of instruction number 17 relating to proximate cause. We believe instruction number 17, when read together with instruction number 16, clearly told the jury that before Jolley could be convicted the jury had to

MR. MADSON [Orrison's counsel]: Okay. Did you relay any of this information ultimately to Bonnie Majak?
CONNIE ORRISON: No, I didn't tell her that.
MR. MADSON: You did—did you tell her that Doug had told you something?
CONNIE ORRISON: I told her that Doug and I had talked. And at that point, Doug was going to go down and tell Paul Keller, or the detective involved, anything that he knew. And he was going to go the next day and I was going to go with him, if he needed me to.
MR. MADSON: Was this—how did you believe this? Did you discuss it with Doug.
CONNIE ORRISON: Yes, I did.
MR. MADSON: Did he agree to do this?
CONNIE ORRISON: Yes, he did.
MR. MADSON: Did he go down there the next day?
CONNIE ORRISON: No, he then talked to his lawyer that morning. And his lawyer—he told me that his lawyer forbade him to go down.
MR. DOWNES [Jolley's counsel]: Objection, Your Honor, and ask that the jury be instructed regarding that.
THE COURT: Objection's overruled.
MR. DOWNES: Well, may I have a hearing outside the presence of the jury?
THE COURT: We'll take a brief recess.

■ The parties then discussed Mr. Downes' objection out of the presence of the jury and the trial court changed its mind. He denied a motion for mistrial but permitted Mr. Downes to write a cautionary instruction which the judge read to the jury immediately after the recess ended:

Ladies and gentlemen of the jury, a question was asked and an answer was given with regard to advice given to Mr. Jolley by his lawyer. And I'm instructing you at this time that you would disregard the answer regarding that statement that

find first that he struck Jesse Orrison and that the striking played a substantial factor in causing Jesse Orrison's death. Consequently, we believe the issue of proximate cause was properly put to the jury.

Mrs. Orrison gave as to the advice given to Mr. Jolley by his lawyer. In addition, the jury's [sic] specifically instructed that the Constitution of the United States and the State of Alaska give an accused the absolute right to have the assistance of counsel for his defense and to give him the absolute right to refuse to give a statement to the authorities. The jury's [sic] instructed that it's to draw no inference whatsoever against the defendant, Douglas Jolley, because of his exercise of either or these two rights as pertains to the testimony of Connie Orrison.

At a later time during the trial, while Mrs. Orrison was being cross-examined by Ms. Finn, the prosecutor, the following questions and answers occurred:

Q. Okay. And do you remember telling Bonnie Majak on January 18th, 1980, that you had talked to Doug on January 9th or 10th and he told you in detail what he had done to Jesse?

A. No, I never said that to her.

Q. Well, do you remember ever saying to her that Doug—you felt that as a result of that Doug was responsible for Jesse's death?

A. I can remember almost exactly what I said to her. I told her that Doug had told me some things that had happened prior to Jesse's death, and that he was going—at that point, he was going to go down and talk to Paul Keller about what he wanted to tell him. He wanted to get things straightened out. And he wanted to be straightened out and have things get back on the right track, because he felt that people were believing things that he never did. So he wanted to get it back on track. But I never said to Bonnie Majak that Doug told me what he did to cause Jesse's death. No.

Jolley did not object to this sequence of questions and answers. He did at a later time renew his motion for mistrial. No party referred to this testimony of Connie Orrison in final argument.

Assuming that it was improper for Orrison to mention Jolley's promise to her to go

down and explain everything to the police officer and his later decision on advice of counsel not to do so, we believe any error was cured by the prompt curative instruction given by the trial court. *See Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981).

Orrison's testimony, viewed in context, was that Jolley's statements to her regarding the circumstances surrounding Jesse's death were consistent with what he later testified to at trial. No party commented upon Jolley's failure to talk to the police in final argument, and Jolley's failure to object when Orrison brought the matter up again in response to the prosecutor's questions, indicates that in that context at least, he considered the evidence favorable.

The judgment of the superior court is AFFIRMED.

COATS, J., not participating.