Richard VAN HATTEN, Appellant,

v.

STATE of Alaska, Appellee.

No. 5877.

Court of Appeals of Alaska.

July 15, 1983.

Geoffry B. Wildridge and Mary E. Greene, Asst. Public Defenders, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Peter A. Michalski, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and SERDAHELY, Superior Court Judge.[*]

## OPINION

BRYNER, Chief Judge.

Richard Van Hatten was convicted of attempted sexual assault in the first degree, a class B felony. AS 11.41.410. He was sentenced to serve a term of ten years' imprisonment, with eight years suspended on condition that he be placed on probation for a five-year period following release from pris-

on. On appeal, Van Hatten raises three contentions: (1) that he was deprived of his right to confront and cross examine[1] the state's key witness; (2) that certain testimony elicited by the prosecution violated his rights to counsel[2] and to remain silent;[3] and (3) that his sentence was excessive.

## FACTS

A review of the facts is necessary for consideration of Van Hatten's first argument. The indictment against Van Hatten alleged that he attempted to have non-consensual sexual intercourse with his step-daughter, T.M.W., on October 1, 1980, at the family's home in Fairbanks. At the time, T.M.W. was seventeen years old.

T.M.W. appeared as a witness before the grand jury and testified in support of the indictment. She stated that, in the early morning hours of October 1, 1980, Van Hatten entered her room and sat down on her bed. He reached under her robe, attempting to touch her vagina. T.M.W. struggled and managed to slide off her bed onto the floor. Van Hatten left the room, but returned shortly. He picked T.M.W. off of the floor, placed her on the bed and climbed into bed on top of her. T.M.W. was terrified. She struggled with Van Hatten, bit him in the area of his shoulder, and screamed loudly. Van Hatten terminated his attack when T.M.W.'s mother entered the room.

Adrianna Van Hatten, Richard Van Hatten's wife and T.M.W.'s mother, also testified before the grand jury, corroborating her daughter's statements. According to Mrs. Van Hatten, she was awakened by her daughter's screams and went to her bedroom. She found Van Hatten on the bed, clad in a t-shirt and underpants. T.M.W. was crying and trembling; she told her mother that Van Hatten had tried to rape

---

[*] Serdahely, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. U.S. Const. amend. VI; Alaska Const. art. I, § 11.

2. U.S. Const. amend. VI; Alaska Const. art. I, § 11.

3. U.S. Const. amend. V; Alaska Const. art. I, § 9.

her. Mrs. Van Hatten immediately summoned the Alaska State Troopers.

Officer Adams and Sergeant Murphy of the Alaska State Troopers went to the Van Hatten residence in the early morning hours of October 1, 1980, in response to Mrs. Van Hatten's complaint. Sergeant Murphy interviewed T.M.W., who gave him a statement substantially similar to the testimony which she later gave to the grand jury. Sergeant Murphy also interviewed Mrs. Van Hatten. Upon completion of the interviews, Van Hatten was arrested and taken to trooper headquarters. An examination of Van Hatten disclosed fresh scratches on his face and a distinct bite mark on his left arm.

Immediately before the scheduled start of Van Hatten's jury trial, T.M.W. and Mrs. Van Hatten informed Superior Court Judge Warren Taylor that they did not want the prosecution of Van Hatten to proceed. Both indicated that they did not desire to testify and that, if called to testify, they would refuse to do so. At the state's request, depositions of T.M.W. and Mrs. Van Hatten were taken; both witnesses responded to questions concerning the specifics of Van Hatten's assault either by claiming an inability to remember or by expressly refusing to answer.

Trial was thereafter commenced. After Officer Adams and Sergeant Murphy testified, T.M.W. was sworn as a witness for the prosecution. She answered preliminary questions without reluctance but when questioning turned to the specific occurrences of October 1, 1980, she maintained that she was unable to recall most details. Over objections by defense counsel, the prosecutor then played a recording of T.M.W.'s grand jury testimony for the jury. The recording was ruled admissible as a prior inconsistent statement.

After T.M.W. testified, the prosecutor recalled Sergeant Murphy, who, again over objection by the defense, testified as to the substance of T.M.W.'s statements to him on the morning of the assault. This testimony was also admitted as proof of a prior statement by T.M.W. inconsistent with her trial testimony.

Adrianna Van Hatten was later called as a witness for the defense. Much like T.M.W., Mrs. Van Hatten denied any ability to recall the particulars of the October 1 incident. The thrust of her testimony, however, was that she had quarreled with Van Hatten over domestic problems on the night of the alleged assault, that she had been drinking and was extremely upset with Van Hatten at the time, and that, for these reasons, it was likely that she had exaggerated Van Hatten's conduct in her complaint to the troopers. During cross-examination, the prosecution was allowed to impeach this testimony by playing the recording of Mrs. Van Hatten's testimony before the grand jury.

## ADMISSIBILITY OF T.M.W.'S GRAND JURY TESTIMONY

In his first point on appeal, Van Hatten challenges the admissibility at trial of the grand jury testimony given by T.M.W. Van Hatten asserts that T.M.W.'s lapses of memory at trial were not inconsistent with her prior testimony, since they effectively constituted a refusal to answer and did not amount to testimony. He further asserts that T.M.W.'s unwillingness or inability to recall the details of the alleged assault rendered her functionally unavailable for cross-examination, thereby depriving him of his constitutional right to confront and cross-examine prosecution witnesses.

The admissibility of prior inconsistent statements for impeachment of a witness is generally governed by Alaska Rule of Evidence 613(a), which states:

> (a) *General Rule.* Prior statements of a witness inconsistent with his testimony at a trial, hearing or deposition . . . are admissible for the purpose of impeaching the credibility of a witness.

Under the provisions of Evidence Rule 801(d)(1)(A), prior inconsistent statements may be used not only as impeachment, but also for proof of the facts contained in the prior statements. In relevant part, Rule 801(d)(1)(A) states:

(d) *Statements which are not hearsay.* A statement is not hearsay if

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and the statement is

(A) inconsistent with his testimony. . . .

Thus, if T.M.W.'s statements at trial can properly be regarded as testimony, and if her testimony was inconsistent with her prior testimony before the grand jury, recordings of T.M.W.'s grand jury testimony were admissible not only to impeach her testimony at trial, but also to prove the substance of the matters addressed in her grand jury testimony.

With respect to the admissibility of T.M.W.'s grand jury testimony under Evidence Rule 801(d)(1)(A), the state has argued, and we are inclined to agree, that the Alaska Supreme Court's ruling in *Richards v. State,* 616 P.2d 870 (Alaska 1980), is highly significant. In *Richards,* the defendant was accused of manslaughter in connection with the death of his six-week-old son. The incident had been viewed by the defendant's eight-year-old son, who was called by the prosecution as a witness at trial. In his testimony, however, the boy had forgotten much of what he had witnessed. The state was permitted to show a videotape of the boy, made shortly after the incident, in which he reenacted what he had seen. The videotape was the primary evidence supporting the state's manslaughter charge. On appeal, the supreme court upheld admission of the videotape as a prior inconsistent statement of the witness. Although the offense occurred before adoption of the Alaska Rules of Evidence, the Alaska Supreme Court noted the similarity of Evidence Rule 801(d)(1)(A) to former Civil Rule 43(g)(11)(C), which applied to the case. *See Richards,* 616 P.2d at 871 n. 1.

Van Hatten urges that *Richards* is distinguishable for two reasons. First, Van Hatten asserts that the witness' inability to remember in *Richards* was genuine. Van Hatten contends that, by contrast, T.M.W.'s loss of memory was obviously feigned and amounted to a refusal to testify. Second, Van Hatten points to the fact that the witness in *Richards* was available at trial and could be cross-examined about his lack of memory. He contends that, in this case, T.M.W.'s disingenuous memory loss made her unavailable for effective cross-examination, thereby depriving him of his constitutional right to confrontation. Neither of these distinctions is persuasive in the context of the present case.

We first consider whether T.M.W.'s statements at trial indicating an inability to recall the events of October 1, 1980, can properly be considered inconsistent with her grand jury testimony, in which her recollection was intact. As Van Hatten has correctly pointed out, a number of courts have adopted a narrow definition of inconsistency and would not hold that a loss of memory at trial is inconsistent with a previous ability to recall. *See, e.g., United States v. Palumbo,* 639 F.2d 123 (3rd Cir.), *cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981); and *State v. Lomax,* 227 Kan. 651, 608 P.2d 959, 966 (1980).

Other courts, however, have distinguished between outright refusal to testify and evasive answers, holding that only refusal will preclude a finding that prior statements of a witness are inconsistent with his trial testimony. *See, e.g., United States v. Insana,* 423 F.2d 1165, 1169–70 (2d Cir.), *cert. denied,* 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970). Similarly, many decisions have expressly concluded that inconsistency may be found when a witness is unable to recall at trial matters contained in prior testimony or statements. *See, e.g., United States v. Distler,* 671 F.2d 954, 958 (6th Cir.1981); *United States v. Dennis,* 625 F.2d 782, 794–96 (8th Cir.1980); *United States v. Morgan,* 555 F.2d 238, 242 (9th Cir.1977); *United States ex rel. Thomas v. Cuyler,* 548 F.2d 460, 463 & n. 2 (3rd Cir.1977); and *United States v. Rogers,* 549 F.2d 490, 496 (8th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977). As stated by Judge Weinstein:

[S]ome jurisdictions . . . take the highly technical view of finding an inconsistency only when this is apparent on the face of

the two statements and the only possible inference. The better view, urged by Wigmore, McCormick, and others, and followed by the federal courts, allows the prior statement whenever a reasonable man could infer on comparing the whole effect of the two statements that they had been produced by inconsistent beliefs. In other words, the keystone for impeachment use is relevancy—would the prior statement of the witness help the trier of fact evaluate the credibility of the witness .... The approach under [Federal Rule of Evidence 801(d)(1)(A)] should be the same. Here the question is not whether the statement is helpful in evaluating credibility, but whether it is helpful in resolving a material, consequential fact in issue ....

4 J. Weinstein & M. Berger, *Weinstein's Evidence* § 801(d)(1)(A)[01], at 801–88—801–89 (1981) (footnotes omitted).

We believe that an intent to adopt a broad definition of inconsistency, such as that favored by Judge Weinstein, is implicit in the supreme court's decision in *Richards v. State.* Nor is there any reason to impose a stricter standard in cases involving deliberate failure to recall. To the contrary, commentators have indicated that in some cases genuine forgetfulness or loss of memory may not justify a finding of inconsistency for purposes of introducing a prior statement, but that intentional loss of memory will. As Judge Weinstein has written:

[I]t would seem that the prior statement should not be included under [Federal Rule of Evidence] 801(d)(1)(A) if the judge finds that the witness genuinely cannot remember, and the period of amnesia or forgetfulness is crucial as regards the facts in issue.

4 J. Weinstein & M. Berger, *supra,* § 801(d)(1)(A)[04], at 801–98 (footnote omitted).

■ We conclude that where, as here, a witness deliberately seeks to avoid testifying by claiming loss of memory in response to specific questions, prior statements of the witness relating to the subject matter of the question are inconsistent, within the meaning of Evidence Rules 613 and 801(d)(1)(A).

We turn next to Van Hatten's contention that T.M.W.'s lack of memory precluded effective cross-examination and violated his constitutional right of confrontation. In *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the United States Supreme Court squarely held that the admission into evidence of prior inconsistent statements as substantive evidence of a defendant's guilt is not violative of the confrontation clause as long as the witness who made the prior statements testifies and is subject to cross-examination at trial. The holding of the court in *Green* is reflected in Alaska Rule of Evidence 801(d)(1)(A) and, to a lesser extent, in the corresponding Federal Rule of Evidence.[4]

The primary question left unanswered by the decision in *California v. Green* was the extent to which, under the confrontation clause, a witness must testify and be open to cross-examination before evidence of a prior inconsistent statement could be deemed admissible.[5] Since the ruling in *Green,* however, numerous federal courts have addressed this issue, often with conflicting results. At one end of the spectrum, there are cases holding that feigned memory loss by a witness hampers full and effective cross-examination and is equiva-

---

4. Fed.R.Evid. 801(d)(1)(A) differs from A.R.E. 801(d)(1)(A) primarily in its requirement that, in order to be admitted as substantive evidence of guilt rather than as impeachment, prior inconsistent statements must have been made under oath and subject to the penalties of perjury. To this extent, the federal rule is narrower than the Alaska rule; it is also narrower than the minimal standards set out in *California v. Green. See, e.g., United States v. Distler,* 671 F.2d 954, 959 (6th Cir.1981). For a comparison of A.R.E. 801(d)(1)(A) with Fed.R.Evid.

801(d)(1)(A), *see* Commentary to the Alaska Rules of Evidence, § 801(d)(1)(A) at 220–21.

5. *California v. Green* does, however, make clear the fact that the confrontation clause is satisfied by the availability of a witness for cross-examination as to his memory at the time of trial and does not require an ability to cross-examine as to memory at the time a prior inconsistent statement was made.

lent to a failure to testify, thus precluding introduction of prior inconsistent statements for substantive purposes. *See, e.g., United States v. Palumbo,* 639 F.2d 123, 128 n. 6 (3rd Cir.), *cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981); *United States v. Fiore,* 443 F.2d 112, 115 (2nd Cir. 1971); and *State v. Lomax,* 227 Kan. 651, 608 P.2d 959, 964–67 (1980). *Cf. United States v. Balano,* 618 F.2d 624, 626–27 (10th Cir.1979), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980), and *United States v. Carlson,* 547 F.2d 1346, 1357 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977) (defendant's right to confrontation would preclude introduction of the witness' prior statements, except for the fact that defendant himself procured the witness' refusal to testify at trial). At the opposite end of the spectrum are cases adopting the position advocated by Justice Harlan in his concurring opinion in *California v. Green* [6] and holding, essentially, that the presence of a warm body in the witness chair satisfies the requirements of the confrontation clause, opening the door to introduction of prior, out-of-court statements for substantive purposes. *See, e.g., United States ex rel. Thomas v. Cuyler,* 548 F.2d 460, 463 & n. 2 (3rd Cir.1977) (citing cases); and *United States v. Insana,* 423 F.2d 1165 (2d Cir.), *cert. denied,* 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970).

Thus, the court in *Cuyler* stated, 548 F.2d at 463 (footnotes omitted):

A witness who refuses to be sworn or to testify at all or one who, having been sworn, declines to testify on Fifth Amendment grounds, has not been thus made available for cross-examination. But if he has been sworn and made available the fact that he suffers or feigns a loss of memory does not lessen the fact that the defendant has been confronted with him and presented with the opportunity to cross-examine him to the extent possible, which is all that the Sixth Amendment requires.

■ As evidenced by the divergent views taken by courts considering the issue, difficult issues are presented in attempting to determine whether a defendant's constitutional right of confrontation will be violated by use of prior, extra-judicial statements of a witness as substantive evidence of guilt when the witness has been evasive or suffers from a loss of memory. These issues do not, in our view, readily lend themselves to resolution by the application of a general formula. We believe that the best approach lies in a case-by-case analysis, focusing on the extent to which the witness actually testifies and can be cross-examined, as well as on the nature and reliability of his prior, out-of-court statement. *See United States v. Rogers,* 549 F.2d 490, 500 (8th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977).[7] The

---

6. In *California v. Green,* 399 U.S. at 189, 90 S.Ct. at 1951, 26 L.Ed.2d at 514, Justice Harlan, in a separate concurring opinion, specifically addressed the principal issue left open by the opinion of the court. Justice Harlan stated:

The fact that the witness, though physically available, cannot recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence. The prosecution has no less fulfilled its obligation simply because a witness has a lapse of memory. The witness is, in my view, available. To the extent that the witness is, in a practical sense, unavailable for cross-examination on the relevant facts ... I think confrontation is nonetheless satisfied.

Justice Harlan concluded that, "the Confrontation Clause of the Sixth Amendment reaches no farther than to require the prosecution to *pro-*

*duce* any *available* witness whose declarations it seeks to use at a criminal trial." 399 U.S. at 174, 90 S.Ct. at 1943, 26 L.Ed.2d at 506 (Harlan, J., concurring) (emphasis in original.)

7. Although reliability is a question to be considered on a case-by-case basis, a number of criteria relevant to evaluating the reliability of prior, out-of-court statements have been suggested by other courts. For example, in *United States v. Snow,* 521 F.2d 730, 734–35 (9th Cir. 1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976), the court dealt with the analogous issue of whether the confrontation clause was violated by admission against the defendant, under the co-conspirator exception to the hearsay rule, of prior statements made by an accomplice. Noting that the co-conspirator exception does not automatically assure compliance with the requirements of the confrontation clause, the court in *Snow* focused on the reliability of the out-of-court statement.

relevant factual inquiry in such an analysis is whether, under the circumstances, the jury will be afforded a satisfactory basis for evaluating the truth of the out-of-court statement. *Id.* at 499.[8]

■ Reviewing the facts of the present case in this manner, it is apparent that introduction into evidence of T.M.W.'s grand jury testimony was not violative of Van Hatten's confrontation right. T.M. W.'s prior statement was given under oath and was based on her personal observations. Moreover, T.M.W.'s testimony was corroborated by physical evidence obtained shortly after Van Hatten's assault, by statements which T.M.W. made to her mother and to Sergeant Murphy immediately after the assault, and by statements of T.M.W.'s mother in the course of her testimony before the grand jury.[9]

More significantly, despite her stated intention to refuse to testify, and despite her numerous lapses of memory in response to particular questions, T.M.W. offered substantial testimony concerning the alleged assault and her prior grand jury statements. Notably, T.M.W. admitted being present in her home, together with her father at the time of the incident, and she admitted having been interviewed by Alaska state troopers, who had been summoned to her home in the early morning of October 1, 1980. T.M.W. did not deny making the statements attributed to her by Sergeant Murphy or the statements attributed to her in her mother's grand jury testimony. T.M.W. confirmed the fact that prior to testifying before the grand jury she had talked with a prosecutor for the state about Van Hatten's attitudes and sexual advances towards her. T.M.W. stated that she recalled appearing and testifying before the grand jury, and she acknowledged that she was under oath at the time. Furthermore, T.M.W. identified her own voice on the grand jury tape and stated that, when testifying before the grand jury, she told the truth. T.M.W. readily acknowledged that she did not want to testify against Van Hatten. Yet she was willing to state that

The court relied on the United States Supreme Court's plurality opinion *Dutton v. Evans*, 400 U.S. 74, 88–89, 91 S.Ct. 210, 219–220, 27 L.Ed.2d 213, 226–27 (1970), to indicate four factors relevant to the issue of reliability:

> The *Dutton* plurality opinion sets forth a number of factors which were indicative of reliability in that case: (1) the declaration contained no assertion of a past fact, and consequently carried a warning to the jury against giving it undue weight; (2) the declarant had personal knowledge of the identity and role of participants in the crime; (3) the possibility that the declarant was relying upon faulty recollection was remote; and (4) the circumstances under which the statements were made did not provide reason to believe that the declarant had misrepresented the defendant's involvement in the crime.

521 F.2d at 734. While not an exhaustive list of factors bearing on the question of reliability of a prior, out-of-court statement, we think the four considerations listed in *Snow* provide guidance on the issue and can be of assistance to trial courts faced with issues such as that presented in Van Hatten's case.

**8.** A very similar approach was recently taken by the Arizona Supreme Court in *State v. Allred*, 134 Ariz. 274, 655 P.2d 1326 (1982). In *Allred*, a child who had been sexually assaulted by her father gave testimony at trial exculpating him. She was impeached by statements she had given earlier to an investigating officer and a psychologist. The supreme court approved the use of the child's prior statements, finding, under the circumstances, that the reliability of the prior statements was capable of being sufficiently evaluated through corroborating evidence. The court in *Allred* considered the issue as an evidentiary one calling for determination of whether the probative value of the prior statement outweighed its potential for prejudice under Ariz.R.Evid. 403. *Id.* 655 P.2d at 1329–30.

**9.** Evidence concerning statements made by T.M.W. to Sergeant Murphy was introduced at trial through testimony of Sergeant Murphy; this testimony was admitted under A.R.E. 801(d)(1)(A) as evidence of a prior statement by T.M.W. inconsistent with her testimony at trial. Evidence of T.M.W.'s statements to her mother following the assault, as well as evidence concerning the observations of T.M.W.'s mother at the time of the incident, was presented at trial in the form of a recording of Mrs. Van Hatten's grand jury testimony; this evidence was also admitted under A.R.E. 801(d)(1)(A), after Mrs. Van Hatten's testimony as a witness for the defense. On appeal, Van Hatten has not challenged the admissibility of Sergeant Murphy's testimony or of the recordings of Mrs. Van Hatten's grand jury testimony.

her reluctance was due to the fact that, prior to testifying before the grand jury, the prosecutor had given her a "verbal guarantee" that if Van Hatten was indicted T.M.W. could later decline to press charges. T.M.W. specifically indicated, both on cross-examination and on re-direct examination, that she had testified against Van Hatten before the grand jury as a means of coercing him into obtaining counseling or psychiatric assistance for his problem.

There is widespread agreement that a defendant's right to confrontation will not be violated by introduction of the prior inconsistent statement of a witness if, in the course of testifying at trial, the witness acknowledges that the statement was made and that it was true. In this regard, the Commentary to the Alaska Rules of Evidence states:

> Considerable controversy has attended the question whether a prior out-of-court statement by a person now available for cross-examination concerning it, under oath and in the presence of the trier of fact, should be classed as hearsay. If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem. The hearsay problem arises when the witness on the stand denies having made the statement or admits having made it but denies its truth.

Commentary to the Alaska Rules of Evidence, Section 801(d)(1), at 219.

In the present case, T.M.W. acknowledged appearing before the grand jury, admitted that she was under oath, identified her testimony for the jury, and expressly stated that her grand jury testimony was truthful. Moreover, in testifying as to her reluctance to be a witness at trial and her reasons for testifying before the grand jury, T.M.W. afforded the jury with a more than ample basis upon which to evaluate her credibility at trial and the truthfulness of her testimony before the grand jury. Numerous cases support the proposition that admission of prior inconsistent statements under such circumstances is appropriate and does not amount to a denial of the right to confrontation.[10] We therefore hold that introduction of T.M.W.'s grand jury testimony was proper and did not deprive Van Hatten of his constitutional right of confrontation.

## TESTIMONY CONCERNING INVOCATION OF RIGHTS TO COUNSEL AND TO REMAIN SILENT

Van Hatten also argues that his conviction must be reversed because evidence presented by the state at trial violated his constitutional rights to counsel and to remain silent. The prosecution's first witness at trial was Alaska State Trooper John Adams. Trooper Adams testified briefly, indicating that early in the morning of October 1, 1980, Mrs. Van Hatten contacted him and complained that her husband had attempted to rape T.M.W. Trooper Adams stated that he went to the Van Hatten residence together with Sergeant Murphy, that he eventually arrested Van Hatten, and that, following the arrest, he observed fresh scratches and an apparent bite mark

---

**10.** *See, e.g., United States v. Distler,* 671 F.2d 954 (6th Cir.1981); *United States v. Woods,* 613 F.2d 629, 637 (6th Cir.), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980); *United States v. Dennis,* 625 F.2d 782, 794–96 (8th Cir.1980); *United States v. Mosley,* 555 F.2d 191, 193 (8th Cir.1977), *cert. denied,* 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1978); *United States v. Morgan,* 555 F.2d 238, 242 (9th Cir.1977); *United States ex rel. Thomas v. Cuyler,* 548 F.2d 460, 463 (3rd Cir.1977); *United States v. Rogers,* 549 F.2d 490, 498–500 (8th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977); *United States v. Castro-Ayon,* 537 F.2d 1055, 1057 (9th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976); *United States v. Payne,* 492 F.2d 449, 454 (4th Cir.), *cert. denied,* 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974); and *United States v. Insana,* 423 F.2d 1165 (2d Cir.), *cert. denied,* 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970). *Cf. United States v. Orrico,* 599 F.2d 113, 117–19 (6th Cir.1979) (witness' alleged grand jury testimony, although properly received in evidence when witness could not recall details of the crime, was insufficient to support a conviction because the evidence was only marginally admissible due to lack of proper foundation and because no other evidence was presented connecting defendant with the crime).

on Van Hatten. At the conclusion of Trooper Adams' direct examination, the following dialogue occurred:

Q Okay. And it was Sergeant Murphy that talked with [T.M.W.].

A Right.

Q Okay. And I take it you did not talk with the defendant about this matter in any detail.

A No. Basically after we woke him up we asked—Sergeant Murphy asked him what happened to his face and that stuff and he stated that a muffler had fell on his face at work.

Q Okay.

A He was then advised of his rights and he requested to have his attorney present . . .

Q Okay.

A . . . before any more questioning.

Q You did not ask him any further questions?

A No, I did not.

Q MR. MURPHREE: I'll pass the witness.

There was no objection or motion to strike voiced in response to this testimony, nor was it subsequently called to the attention of the trial court.

Van Hatten nevertheless contends on appeal that Trooper Adams' reference to Van Hatten's invocation of his right to remain silent and to obtain counsel constitutes plain error and warrants a new trial. In advancing this argument, Van Hatten relies primarily on *Dorman v. State,* 622 P.2d 448, 457 (Alaska 1981), and *Gunnerud v. State,* 611 P.2d 69 (Alaska 1980). In *Dorman,* the supreme court held that reversal of a murder conviction was required as a matter of plain error when the prosecutor, during his final argument to the jury, specifically referred to the fact that Dorman had remained silent when interviewed by the police. In determining that plain error under Criminal Rule 47(b) existed, the court relied on the fact that the prosecutor had specifically asked Dorman's jury to draw an inference of guilt from exercise of the privilege to remain silent. *Gunnerud v. State* is fac-

tually closer to Van Hatten's case but did not involve plain error. In *Gunnerud,* the trial court permitted the jury to hear a tape recording of a search conducted at Gunnerud's apartment. Gunnerud was at the apartment when the search was made, and the recording contained a passage in which she was given *Miranda* warnings and invoked her right to remain silent. Over objection by the defense, the trial court permitted the jury to hear this portion of the recording. 611 P.2d at 75. On appeal, the supreme court found that Gunnerud's constitutional rights to counsel and to remain silent were violated when the jury was allowed to hear her assertion of these rights; finding the evidence against Gunnerud to be strong but not overwhelming, the court concluded that the error was not harmless beyond reasonable doubt. 611 P.2d at 76.

█ When the circumstances of the present case are considered in the light of *Dorman* and *Gunnerud,* we believe that the question of plain error is extremely close. Criminal Rule 47(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This rule has been interpreted as follows:

Under the doctrine of "plain error" embodied in Alaska Rule of Criminal Procedure 47(b), this court will not take notice of an error not brought to the attention of the trial court unless it affects a substantive right and is obviously prejudicial. Not all errors of constitutional dimension must be examined in depth under this standard. *See Gilbert v. State,* 598 P.2d 87, 92 (Alaska 1979).

*Dorman v. State,* 622 P.2d at 457 (footnotes omitted). *Gunnerud v. State,* which was decided by the Alaska Supreme Court prior to Van Hatten's trial, makes clear the fact that Trooper Adams' testimony concerning Van Hatten's decision to remain silent until he obtained an attorney was inadmissible. In this sense, the error was obvious. It is also apparent that the error affected a substantive right, since it directly impinged on Van Hatten's constitutional rights to coun-

sel and to remain silent. In context, however, it is far less obvious that Trooper Adams' testimony was actually prejudicial.

While the court in *Dorman* found plain error where there was an express comment on the defendant's exercise of his right to remain silent, in the present case no comment was involved; Trooper Adams' testimony constituted a reference to, but not a comment on, Van Hatten's decision to remain silent. Moreover, the reference was a brief and passing one, and it was not directly elicited by the prosecutor's questioning. At no point in his final argument did the prosecutor mention this evidence. In fact, the prosecutor made no specific reference to any part of Trooper Adams' testimony during final argument, focusing instead on the statements of T.M.W. and Mrs. Van Hatten.

All of these circumstances significantly diminish the possibility of any prejudicial impact flowing from the improper testimony concerning Van Hatten's decision to remain silent. While the evidence of Van Hatten's guilt was, perhaps, less than overwhelming, it was certainly compelling. Furthermore, it is particularly significant that the basic thrust of the final jury argument made by Van Hatten's counsel was that Van Hatten had been attempting to have sexual contact with T.M.W.—a lesser form of assault than that involved in an attempted rape—but that he did not intend to rape her. Even assuming the jury might have been inclined to infer a consciousness of guilt from Van Hatten's silence, any such inference would have been equally consistent with either an intent to rape or an intent to have sexual contact on Van Hatten's part.[11]

Even given these considerations, the holding in *Gunnerud* makes it evident that, if a timely objection had been made, the error in referring to Van Hatten's silence could not be deemed harmless beyond a reasonable doubt. Van Hatten emphasizes this fact on appeal. Van Hatten insists that he has established plain error and is entitled to relief because the obviousness of the error in this case is uncontroverted and because the error involved the violation of a constitutionally protected right.

 We believe, however, that Van Hatten misperceives the requirements of the plain error rule. A party relying on plain error must go beyond a mere showing that error was committed and that the error involved a constitutional right. As held in *Gilbert v. State,* 598 P.2d 87, 92 (Alaska 1979):

> [N]ot all constitutional claims require extensive review under the plain error rule. To say that asserted errors of constitutional dimension must all be examined in depth under the plain error rule would circumvent the strong basic policy which requires that, in order to preserve an error for appeal, an objection must have been made in the trial court.

Thus, the plain error rule has been held to embody the requirement that the error complained of be obviously prejudicial. *Id.* There has been little effort to define the obvious prejudice requirement of the plain error rule. We think it clear, however, that the term obvious prejudice demands the application of a standard more stringent than the harmless beyond a reasonable doubt test applied to determine harmless error in cases where errors of constitutional dimension are preserved for appeal by timely objection. *See Chapman v. California,*

---

11. Van Hatten did not testify at trial; the jury was given an instruction stating that the defendant had a right not to testify and that no inferences could be drawn from his exercise of that right. We consider this instruction to lessen the possibility that actual prejudice resulted from Trooper Adam's statement. Trooper Adam's testimony constituted a reference to Van Hatten's silence, and did not involve a direct comment on the silence. The testimony was thus less likely to cause prejudice and was more susceptible of being mitigated by a curative instruction. *Cf. Padgett v. State,* 590 P.2d 432, 434–35 (Alaska 1979) (differentiating between an improper comment in testimony and an improper comment during final argument and noting that the former is more Likely to be cured by a jury instruction). *See also Jolley v. State,* 655 P.2d 784, 785–86 (Alaska App.1982) (holding that an error similar to that in the present case was cured by an appropriate jury instruction).

386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ The correct measure of obvious prejudice under the plain error rule must, we believe, fall far closer to the more flexible standard of harmless error employed in cases where non-constitutional error is involved: whether it can be fairly said that the alleged error did not appreciably affect the jury's verdict. *See Love v. State,* 457 P.2d 622, 630–32 (Alaska 1969). We think that the *Love* standard of harmless error is particularly well suited for determining whether obvious prejudice has occurred, since the primary goal of the standard is to assure fundamental fairness to the accused, the same basic goal with which the plain error rule is concerned.

The obviousness of the error committed in this case, the ease with which it could have been avoided, and the fundamental nature of the rights which it affected are all factors that weigh heavily in favor of a finding of plain error in this case. However, consideration of the totality of the circumstances presented in this case does not convince us that the improper reference to Van Hatten's silence had an appreciable effect on the jury's verdict. For this reason, we are compelled to find that Van Hatten has failed to make a showing of obvious prejudice, as required by Criminal Rule 47. We hold that Trooper Adam's testimony did not constitute plain error.

## EXCESSIVENESS OF SENTENCE

Van Hatten's final contention is that his sentence of ten years' imprisonment, with eight suspended, is excessive. We reject this contention.

Evidence available to the sentencing judge established that Van Hatten had been convicted of robbery in 1959 and of embezzlement in 1963. For the latter offense, he received a sentence of three years' imprisonment. In addition, Van Hatten had accumulated a fairly extensive record of convictions for alcohol-related misdemeanors; most noteworthy were three drunk driving convictions entered against him in the two-year period immediately preceding commission of this offense. Van Hatten's assault of T.M.W. was committed while he was intoxicated.

Evidence presented at trial and at the sentencing hearing also indicated that Van Hatten's assault of T.M.W. was not an isolated incident. Van Hatten had repeatedly assaulted T.M.W. over a period of approximately five years. Moreover, it was revealed that Van Hatten had been involved in a long series of sexual assaults against T.M.W.'s older sister, J.W. In 1976, Alaska State Troopers received a report that Van Hatten had assaulted J.W., who was then fifteen years of age. J.W. was interviewed and stated that Van Hatten had sexually assaulted her with varying degrees of intensity, including sexual intercourse, for approximately two years. T.M.W. was also interviewed at the time and indicated that she had witnessed some of the assaults and that Van Hatten had also attempted. to molest her. Van Hatten was then interviewed, and he admitted involvement in the sexual assault of J.W., but explained that J.W. had instigated his conduct by leading him along. Formal prosecution was apparently dropped in return for a promise by Van Hatten to undertake a course of family counseling. According to the pre-sentence report in this case, however, Van Hatten made only one contact with a family counselor.

At the time of sentencing, Van Hatten was forty-two years of age. Despite his long-standing problem of alcohol abuse and his extensive misdemeanor history, he had maintained a good employment record and was active in the Fairbanks business community. Upon review of the circumstances involved in this offense, as well as other pertinent information concerning Van Hatten's background, the probation officer assigned to write Van Hatten's presentence report recommended the sentence that was ultimately imposed by the court.

■ Van Hatten's initial contention with respect to sentencing is that, in imposing the sentence, Judge Taylor penalized him for exercising his right to have a trial.

A review of the sentencing remarks upon which Van Hatten predicates this claim reveals that it is unfounded. Van Hatten also argues that Judge Taylor improperly failed to give adequate consideration to the sentencing goal of rehabilitation. We are mindful of the fact that the trial court is assigned primary responsibility for sentencing; included in this responsibility is the task of weighing and determining the priorities to be given to various sentencing goals. *Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973); *Nicholas v. State,* 477 P.2d 447, 448–49 (Alaska 1970). Given Van Hatten's conduct in the present case, given his long-standing history of similar conduct, and given his prior record of criminal misconduct, we cannot conclude that Judge Taylor was clearly mistaken in imposing the sentence of ten years with eight suspended. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).[12]

The conviction and sentence are AFFIRMED.

COATS, J., not participating.

SERDAHELY, Superior Court Judge, concurring in part and dissenting in part.

I generally agree with the majority's treatment of, and conclusions regarding, the issues of the admissibility of T.M.W.'s prior inconsistent statements, confrontation clause and cross-examination considerations regarding such statements, and the claimed excessiveness of Van Hatten's sentence. On the question of the effect of Trooper Adams' testimony, however, I am compelled to respectfully dissent from the majority's conclusions.

More specifically, I generally agree with the majority that "the question of plain error is extremely close" and that pursuant to *Gunnerud v. State,* 611 P.2d 69 (Alaska 1980), "if a timely objection had been made, the error in referring to Van Hatten's silence could not be deemed harmless beyond a reasonable doubt." I further agree with the majority that *Dorman v. State,* 622 P.2d 448 (Alaska 1981) (wherein the prosecutor commented during final argument upon the defendant's invocation of his right to remain silent) is distinguishable from the instant case. And, I also agree with the majority's conclusion that in the absence of a timely objection at trial, a defendant seeking to establish plain error for the first time on appeal should meet a standard more stringent than the "harmless beyond a reasonable doubt" test, i.e., should show some prejudice or that the alleged error could well have affected the jury's verdict.

Given the foregoing, however, I am unable to conclude that the challenged testimony in the instant case was not prejudicial to the defendant or did not, in some meaningful way, affect the jury's verdict. Rather, I believe that the Alaska Supreme Court's comment in *Gunnerud* applies with equal force to this case:

> We can see no reason why it was necessary for the prosecution to introduce the portion of the recording into evidence other than to show an inference of guilt at the expense of the appellant's rights to counsel and to remain silent.

611 P.2d at 76 (footnotes omitted).

Accordingly, consistent with the policy and holding of *Gunnerud,* I would reverse the judgment of the lower court on this issue and remand the case for a new trial.

---

12. In his reply brief, Van Hatten has argued, for the first time, that his sentence exceeded the presumptive term prescribed for a second offender (four years) and that it therefore violates our holding in *Austin v. State,* 627 P.2d 657 (Alaska App.1981). He also cites *Andrews v. State,* 552 P.2d 150 (Alaska 1976), and maintains that the total length of his sentence, including the eight years of suspended imprisonment, is unjustified. We find no merit in these arguments. *See Tazruk v. State,* 655 P.2d 788, 789 (Alaska App.1982).