NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

CON LYSLE COMPTON,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12918
Trial Court No. 4FA-16-01906 CR

O P I N I O N

No. 2695 — March 26, 2021

Appeal from the District Court, Fourth Judicial District, Fairbanks, Matthew C. Christian, Judge.

Appearances: David T. McGee, Attorney at Law, under contract with the Public Defender Agency, and Beth Goldstein, acting Public Defender, Anchorage, for the Appellant. David Buettner, Assistant District Attorney, Fairbanks, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge HARBISON.

Con Lysle Compton was convicted of fourth-degree assault following a jury trial.[1] This conviction was based on an incident in which Compton yelled at the victim, Emily Markkanen, and advanced toward her with a raised fist, placing her in fear of imminent physical injury.

Compton appeals, arguing that, on several occasions, the court improperly precluded him from introducing recordings of Markkanen's statements to one of the troopers on the day of the incident. As we explain in this opinion, although we agree with Compton that the trial court misunderstood the procedural prerequisites for introducing a prior inconsistent statement, we conclude that this error does not require reversal of Compton's conviction.

*Facts and proceedings*

In 2016, Emily Markkanen was in a consensual sexual relationship with Con and Jessica Compton. She lived in the Comptons' home and became pregnant with Con Compton's child. In August of that year, Markkanen and the Comptons had an argument. After the argument ended, Markkanen called her mother, who in turn called the Alaska State Troopers. When the troopers responded to the home, Trooper Michael Kay interviewed Markkanen and recorded the interview. During the interview, Markkanen told Kay that, during the argument, Con Compton hit her on the head and face. Kay later interviewed Compton. Compton admitted that he argued with and threatened Markkanen but denied physically assaulting her.

The State subsequently filed a complaint charging Compton with fourth-degree assault, alleging that Compton recklessly caused physical injury to Markkanen. Shortly before the scheduled trial date, the State charged Compton with a second count

---

[1]    AS 11.41.230(a)(3).

of fourth-degree assault, alleging that Compton recklessly placed Markkanen in fear of imminent physical injury.

The matter proceeded to a jury trial. During the trial, Markkanen testified that the assault occurred after she and Jessica Compton went into the bedroom to talk. She told the jury that Con Compton then came into the bedroom and began yelling at them. Markkanen testified that Compton "came at [her] angrily with a fist," and that she stepped backwards, tripped on a bed frame, and hit her head. According to Markkanen, Compton then struck her on her face and on the back of her head.

During the defense attorney's cross-examination of Markkanen, Markkanen testified that she could not remember all of the statements she made when she was interviewed by Trooper Kay. When Compton's attorney sought to play a portion of the recording of the interview, the trial court ruled that the attorney could not play the recording unless he first asked Markkanen whether she made that specific statement. Specifically, the court ruled that if Markkanen denied making the statement, Compton's attorney would be permitted to play the recording. But if Markkanen responded that she did not remember whether she made the statement, then Compton's attorney would be limited to attempting to refresh Markkanen's memory by playing the recording for her outside the presence of the jury.

Compton's attorney acknowledged the court's ruling and refreshed Markkanen's memory outside the presence of the jury rather than playing the recording of her prior statement in front of the jury. On three additional occasions, Compton's attorney refreshed Markkanen's memory about portions of her conversation with Kay by playing recordings of the conversation outside of the presence of the jury. Each time, after her memory was refreshed, Markkanen agreed that the conversation had occurred.

The jury acquitted Compton of the charge that he caused physical injury to Markkanen, but it convicted him of the fear assault charge. Compton now appeals his conviction.

On appeal, Compton claims that the trial court improperly precluded him from introducing recordings of Markkanen's statements to Kay. Although we agree with Compton that the trial court may have misunderstood the procedure for admitting extrinsic evidence of a prior inconsistent statement, we nevertheless conclude that the trial court's error does not require reversal of Compton's conviction.

*Extrinsic evidence of a prior inconsistent statement may be admitted when the witness does not remember making the statement, and the proponent of the evidence is not required to present the statement to the witness outside the presence of the jury*

Compton argues that the trial court was mistaken about the procedure for impeaching a witness with extrinsic evidence of a prior inconsistent statement under Alaska Evidence Rules 613(b) and 801(d)(1)(A). We agree and conclude that the trial court was incorrect when it ruled that before Compton's attorney could impeach Markkanen with a recording of an inconsistent statement that she could not recall making, he was required to play the recording for Markkanen outside of the presence of the jury to refresh her memory regarding her prior statement.

Under the Alaska Rules of Evidence, a prior statement of a witness that is inconsistent with the testimony of the witness at trial is admissible for the purpose of impeaching the witness's credibility under Rule 613(a) or for the purpose of proving the truth of the matter asserted under Rule 801(d)(1)(A). And when a prior inconsistent statement is offered for its truth under Rule 801(d)(1)(A), it is error for a court to require

the proponent of this evidence to lay a foundation greater than the one required under Rule 613(b).[2]

Evidence Rule 613(b)(2) is clear that the proponent of the evidence is not required to reveal the content of the recording to the witness before questioning the witness about the statement. Instead, this rule provides:

> Before extrinsic evidence of a prior contradictory statement or of bias or interest may be admitted, the examiner shall lay a foundation for impeachment by affording the witness the opportunity, while testifying, to explain or deny any prior statement, or to admit, deny, or explain any bias or interest. . . . In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.[3]

This provision of Rule 613 abrogated the contrary rule at common law, which required the proponent of the evidence to confront the witness with the recorded statement outside of the presence of the jury.[4]

The trial court apparently believed that a witness must be given a chance to review the prior inconsistent statement outside the jury's presence before extrinsic evidence of the statement could be admitted. But, as noted above, this was incorrect.

The trial court also erred in concluding that Markkanen was required to explicitly deny making a prior statement before extrinsic evidence of the statement could

---

[2] *See* Alaska R. Evid. 801(d)(1)(A) cmt. para. 4 ("[C]ounsel should lay the foundation for an inconsistent statement while the witness . . . is testifying, as under Rule 613.").

[3] Alaska R. Evid. 613(b)(2).

[4] *Active v. State*, 153 P.3d 355, 362 (Alaska App. 2007) (citing Alaska R. Evid. 613(b) cmt. para. 5-7).

be introduced. The commentary to Rule 613 explains that, in order to impeach a witness with extrinsic evidence of a prior inconsistent statement, the proponent of the evidence must remind the witness of the substance of the statement and then ask the witness "either to admit having made the statement and explain the circumstances, or to deny it."[5] The rule then explains that this foundation "afford[s] the witness the opportunity, while testifying, *to explain or deny* any prior statement."[6]

Thus, a witness need not explicitly deny making the statement in order for the statement to be admitted, as long as the witness is given an opportunity to *explain* the prior statement. When, as in this case, a witness does not remember making a prior statement that is inconsistent with matters within the witness's testimony, extrinsic evidence of the statement is admissible.[7]

For these reasons, the trial court's ruling regarding the procedure that governs impeachment by extrinsic evidence of a prior inconsistent statement was in error.

---

[5] Alaska R. Evid. 613(b) cmt. para. 2; *see also* Alaska R. Evid. 801(d)(1)(A) cmt. para. 4.

[6] Alaska R. Evid. 613(b) (emphasis added).

[7] *See Vaska v. State*, 135 P.3d 1011, 1015-16 (Alaska 2006) (explaining that "inconsistency" does not "necessarily require textual conflict; other circumstances, including lack of memory at trial, may suffice" (citations omitted)); *Wassilie v. State*, 57 P.3d 719, 722 (Alaska App. 2002) (concluding that prior inconsistent statements were admissible under Evidence Rule 801(d)(1)(A) where an elderly witness could not recall at trial prior statements he made to police investigating an assault); *Brandon v. State*, 839 P.2d 400, 411-12 (Alaska App. 1992) (concluding that prior inconsistent statements were admissible where the witness had no memory at trial of the prior statements); *Van Hatten v. State*, 666 P.2d 1047, 1049-51 (Alaska App. 1983) (concluding that even feigned memory loss may render prior statements inconsistent with a witness's trial testimony), *abrogated on other grounds by Adams v. State*, 261 P.3d 758 (Alaska 2011) .

*Two of the recorded statements did not implicate Evidence Rule 613(b)*

On appeal, Compton characterizes four of Markkanen's statements to Trooper Kay as "prior inconsistent statements," and he asserts that the trial court erred when it refused to allow him to play recordings of the statements for the jury as permitted by Evidence Rule 613(b). But we conclude that two of the statements did not implicate this evidence rule.

The first of these two statements pertained to the timing of Markkanen's disclosure that Compton hit her. During cross-examination, Compton's attorney questioned Markkanen about when she told Kay that she had been struck. Specifically, the attorney asked Markkanen whether she told Kay in her "initial telling" (or "first statement") to Kay that Compton hit her. Markkanen responded in the affirmative — *i.e.*, that she did tell Kay that Compton hit her. But she expressed confusion about what the defense attorney meant by "first statement" or "initial telling," and stated, "I guess I don't know your question." She then agreed with Compton's attorney that listening to the recording of the interview could refresh her memory. The trial court excused the jury to allow this to occur.

Outside of the presence of the jury, the attorney played a lengthy excerpt of the recording of Markkanen's conversation with Kay, which began when Kay arrived at the home. During this portion of the recording, Markkanen did not tell Kay that Compton had been physically violent.

In response to questioning by the court, the defense attorney clarified that when he used the phrase "initial telling," he was describing the portion of the interview that he had just played, which occurred before Markkanen's parents interrupted the conversation. After hearing this explanation, the trial court characterized the defense attorney's question to Markkanen about her "initial telling" of events as "problematic"

and "confusing." The court then instructed the defense attorney to clarify his question when the jury returned.

After the jury was recalled, the following exchange occurred:

> *Defense attorney*: So, Ms. Markkanen, isn't it true that you didn't actually mention being hit until after your parents had interrupted your conversation with Trooper Kay?

> *Markkanen*: That is true.

On appeal, Compton argues that the trial court erred by requiring him to refresh Markkanen's memory with the recording of her statement and contends that Rule 613 authorized him to play the recording for the jury. But, as we have explained, extrinsic evidence of a prior inconsistent statement is admissible under either Rule 613(a), for the purpose of proving bias or impeaching the witness's credibility, or under Rule 801(d)(1), for the purpose of proving the truth of the matter asserted. Compton did not offer the recording of Markkanen's prior statement for any of these purposes. Instead, Compton relied on the recording to establish the *timing* of Markkanen's report that Compton hit her — *i.e.*, that she did not report this until after her parents interrupted her conversation with Kay.

Rule 613(b) is not implicated under these circumstances. Once Compton's attorney clarified his question so that it was no longer confusing, Markkanen agreed with the defense attorney's suggestion that, although she eventually told the troopers that Compton hit her, she did not do so until after her parents interrupted the conversation. Accordingly, the trial court did not err by excluding the recording of Markkanen's statements to Kay.

The second recorded statement Compton identifies on appeal was a conversation between Markkanen and Kay about child custody. During cross-examination, Compton's attorney asked Markkanen whether she was aware that she and

Compton might disagree about custody of their unborn child. Markkanen responded that she was aware of this issue. The attorney then asked Markkanen whether she had spoken to Kay about the custody situation. When Markkanen responded that she could not remember talking to Kay about the custody situation, the attorney refreshed Markkanen's memory by playing the recording of the conversation outside the presence of the jury.

The portion of the recorded conversation that the defense attorney played outside the jury's presence included Kay's lengthy remarks to Markkanen explaining child custody proceedings:

> *Kay*: . . . a child custody agreement to kind of, you know, to have it grow and . . .

> *Markkanen*: That's my question.

> *Kay*: That's something that's going to be between you and Con and the courts to come to a child custody agreement. Obviously, you know, the baby's in you. It's part of you, you know, and . . . it belongs to you right now, so, you know, you can do your best, you know, to, you know, have it grow in, you know, the normal way and then as soon as its born, then you can go to court and get that child custody agreement to kind of get better answers of, you know, who can do what, when, and all that stuff with the kids. You know, if he's saying these things to you and against, you know, the unborn child, definitely have all this ready to go in front of a judge. That way the judge can make his decision and ultimately if he chooses to do so, then he can, you know, give you full custody and keep him away from him or whatever the judge decides to do.

> *Markkanen*: Yeah.

When the jury returned, Compton's attorney again asked Markkanen about the conversation she and Kay had about child custody:

*Defense attorney*: So, Ms. Markkanen, you remember having a conversation with Trooper Kay about custody over your newborn child, right?

*Markkanen*: Yes.

*Defense attorney*: And do you remember him telling you that in this kind of situation, the effect of . . . these circumstances and your accusations could play into that child custody agreement?

*Markkanen*: Right.

Compton argues that the trial court erred when it did not permit him to introduce the recording of Markkanen's conversation with Kay about child custody. But the recorded conversation was a statement primarily made by *Kay*, not by Markkanen. A prior statement qualifies as "prior inconsistent statement" if "[t]he declarant testifies at the trial . . . and the statement is inconsistent with *the declarant's* testimony."[8] Here, the defense attorney was not seeking to establish that the statement was inconsistent with Kay's trial testimony. Instead, the defense attorney's goal was to establish that Kay told Markkanen that her accusation could impact child custody. As a result, the statement was not a "prior inconsistent statement," and the exclusion of the recording of Kay's remarks to Markkanen did not implicate either Rule 801(d)(1)(A) or Rule 613(b).

For these reasons, the procedures for introducing extrinsic evidence of an inconsistent statement under Rule 613(b) did not apply to either of these two recorded statements.

---

[8]   Alaska R. Evid. 801(d)(1)(A) (emphasis added).

*Two of the recorded statements did implicate Evidence Rule 613(b)*

In contrast to the two recordings we have just discussed, the two other recordings at issue in this appeal *do* contain statements by Markkanen that could be considered "inconsistent statements" and thus implicate Evidence Rule 613(b).

The first of these was a statement Markkanen made to Trooper Kay about why she went into a separate bedroom just before Compton started yelling at her. During the trial, Markkanen testified that she went into the bedroom in order to talk with Jessica Compton. But during her interview with Kay, she stated that she went into the bedroom because "I get really mad and say things." As a result, Markkanen's prior statement about why she went into the bedroom was inconsistent with her trial testimony, and it was offered to impeach her credibility under Rule 613(b).

The second statement that implicated Rule 613(b) was Markkanen's statement to Kay describing the course of events that caused her to hit her head on the bed. During her trial testimony, Markkanen testified that she tripped and hit her head on the bedframe when she was backing away from Compton. By contrast, during her interview with Kay, Markkanen stated that Compton pushed her, causing her to hit her head on the mattress. Thus, Markkanen's prior statement to Kay was inconsistent with her trial testimony, and it was also offered to impeach her credibility under Rule 613(b).

Because Compton established at trial that these two statements were both prior inconsistent statements that were admissible to impeach Markkanen's credibility, Rule 613(b) authorized the admission of extrinsic evidence of these statements. Accordingly, when Markkanen testified that she did not remember making these statements, the trial court erred by requiring Compton to attempt to refresh her memory by playing the recordings for her outside of the presence of the jury.

The remaining question raised by this appeal is whether the trial court's erroneous evidentiary ruling requires reversal of Compton's convictions.

*The trial court's erroneous ruling was harmless*

Compton argues that the trial court's ruling prohibiting him from introducing the recordings of Markkanen's statements was a constitutional error because it denied him his constitutional right to cross-examine witnesses and to present a defense. We disagree.

Compton's attorney engaged in a robust cross-examination of Markkanen about these inconsistent statements. For example, during his cross-examination of Markkanen, Compton's attorney was able to establish that Markkanen admitted to Trooper Kay that she "had a temper." Based on this admission, he also established that Markkanen's explanation at trial that she went into the bedroom in order to talk to Jessica Compton was different from the explanation she gave Kay.

Similarly, Compton's attorney was able to highlight the inconsistencies in Markkanen's description of the assault. For example, during cross-examination, Markkanen confirmed that she told Kay that Compton had pushed her down, even though she first testified that she had tripped. And Compton's attorney was able to show that Markkanen was not consistent in describing how many times and where Compton hit her.

Moreover, Compton's attorney relied on these inconsistencies in Markkanen's description of the events during his closing argument. According to Compton's attorney, Markkanen provided "multiple versions" of the events and, as a result, the jury should doubt the accuracy of her testimony. Contrary to Compton's

assertion, the trial court's ruling did not undermine his constitutional right to cross-examine Markkanen or his right to present a defense.

In the absence of a constitutional error, the trial court's evidentiary errors require reversal only if the errors appreciably affected the jury's verdict.[9]

Compton contends that the recordings of Markkanen's prior statements, rather than her testimony regarding these statements, would have more effectively undermined Markkanen's credibility. He argues that, for this reason, the court's misunderstanding of the procedures for admitting extrinsic evidence of a prior inconsistent statement appreciably affected the jury's verdict and requires reversal of his conviction.

We reject this contention for two reasons. First, as we have explained, only two of the challenged statements were erroneously excluded. Second, Compton's defense did not rely on the jury believing one version of Markkanen's statements over the other. Rather, the defense relied on the fact that Markkanen provided "multiple versions" of the events, a fact established by Markkanen's acknowledgment of her previous inconsistent statements. If the attorney had asked the jury either to credit Markkanen's trial testimony or instead to credit her prior inconsistent statements, the exclusion of the recording of Markkanen's statements would be more problematic. But in this case, the jury did not need to evaluate Markkanen's demeanor as she told the troopers about the incident because evidence of her inconsistent stories was not introduced for its truth, but to impeach Markkanen's testimony generally by showing that her recollections were unreliable.

We conclude that presenting the jury with the recordings instead of Markkanen's unelaborated concession that she had previously made inconsistent

---

[9] *Love v. State*, 457 P.2d 622, 631-32 (Alaska 1969).

statements would not have appreciably affected the verdict. Accordingly, we conclude that the trial court's ruling excluding extrinsic evidence of these two statements was harmless.

*Conclusion*

The judgment of the district court is AFFIRMED.

2695